UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TIMOTHY SCOTT HUTTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:10-cv-00105 |
| v. | ) | |
| | ) | |
| LT. RICKY KNIGHT, JOHN | ) | JUDGE SHARP |
| MAXWELL, OFFICERS JOHN DOE, | ) | MAGISTRATE JUDGE GRIFFIN |
| and THE CITY OF BRENTWOOD, | ) | |
| TENNESSEE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Defendants Ricky Knight, John Maxwell, Officers John Doe, and the City of Brentwood, Tennessee (collectively, "Defendants") filed a Motion for Summary Judgment (Docket Entry No. 46), to which plaintiff Timothy Scott Hutten ("Plaintiff") filed a response (Docket Entry No. 53), and Defendants filed a reply (Docket Entry No. 62). For the reasons discussed herein, the Court will grant in part and deny in part Defendants' motion for partial summary judgment. The Court will also deny as moot Defendants' motion to strike certain of Plaintiff's responses to Defendants' statement of undisputed material facts. (Docket Entry No. 63.)

## FACTS

On April 22, 2009, Plaintiff was traveling northbound along Franklin Road to the Kroger in Brentwood.[1] The Brentwood Police Department had set up a traffic Directed

---

[1] Unless otherwise noted, the facts are drawn from the parties' statements of material facts (Docket Entry Nos. 47 and 73-1) and related declarations and exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. ZenithRadio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

1

Enforcement Team near the corner of the Kroger parking lot. Officer John Maxwell was operating a device on the side of Franklin Road to measure the speed of passing vehicles. As Plaintiff approached the Kroger, he saw an individual, later identified as Lieutenant Ricky Knight, standing in the middle of Franklin Road without a safety vest, holding his arms up as if he were pointing something at Plaintiff's vehicle. Although officers were motioning other vehicles to turn into the parking lot to receive traffic citations, Plaintiff voluntarily pulled into the lot and stopped his vehicle where Maxwell was standing.

The parties dispute the substance of what Plaintiff told Maxwell after turning his vehicle into the parking lot. According to Defendants, Maxwell heard Plaintiff say, "You scared me; I'm going to get my gun." (Docket Entry No. 51 ¶ 10.) Knight also heard Plaintiff add comments to the effect that "Somebody's liable to get shot" and "You guys have alarmed me." (Docket Entry No. 48-7, at 49:19—50:5, 57:20-21.) According to Plaintiff, the non-moving party, he told Maxwell, "Someone's liable to get shot or run over standing in the middle of the road" (Docket Entry No. 48-8, at 167:8-11), and never used the word "gun" (*id.* at 171:5-13).

After his comments to Maxwell, Plaintiff was told to "move on." (Docket Entry No. 48-8, at 169:12-15.) He then parked in the Kroger lot and went inside to purchase groceries. Upon leaving the parking lot, Plaintiff took pictures of the scene. After heading north to take care of some other business, Plaintiff drove southbound along Franklin Road on his way home. Maxwell recognized Plaintiff's vehicle from their prior encounter. As Plaintiff passed the Kroger parking lot, the officers could see Plaintiff slowing down and holding a silver object in his hands. The silver object turned out to be Plaintiff's camera, which he was using to record a video of the traffic stop.

2

Later that day, Plaintiff called the Brentwood Police Department to inquire about the procedure for filing a complaint against an officer. The call was transferred to Knight's cell phone, and Knight agreed to meet Plaintiff at the headquarters. Once there, Plaintiff asked Knight for the form so that Plaintiff could file a complaint. Plaintiff started to fill out the form at the police department but felt uncomfortable doing so in Knight's presence. Before Plaintiff could leave the department and return to his vehicle, Knight told Plaintiff to stop because Plaintiff was being detained for disorderly conduct based on the events at the traffic stop. Knight then called Maxwell to the department. Once Maxwell arrived, he and Knight accused Plaintiff of being the person in the Kroger lot who had stated that he was going to get his gun. Later that day, Maxwell swore out an affidavit of complaint in Williamson County General Sessions Court charging Plaintiff with disorderly conduct, a Class C misdemeanor, and alleging the following facts:

> On 4-22-09 at approximately 11:00 a.m., Brentwood Police Officers Twilford and Maxwell were conducting traffic enforcement at 330 Franklin Road in Brentwood, TN. A subject later identified as [Plaintiff] drove by and yelled "you scared me; I'm getting my gun". [Plaintiff] drove away and then returned and took pictures of the officers. [Plaintiff] drove past the enforcement area and stopped several times.
>
> Officer Maxwell believed that the offense would continue.

(Docket Entry No. 48-5.)

On June 2, 2009, Plaintiff's case was retired, subject to the conditions that, in the subsequent thirty days, Plaintiff would incur no new charges and would have contact with law enforcement personnel for emergency purposes only. (*See* Docket Entry No. 48-6.) Plaintiff's criminal defense attorney signed the judgment. (*Id.*) Plaintiff testified that his counsel explained the conditions of the retirement and Plaintiff understood those conditions. (Docket Entry No. 48-9, at 223:18—224:25.)

3

# ANALYSIS

Plaintiff's amended complaint (Docket Entry No. 12) pleads multiple causes of action for Defendants' alleged violations of Plaintiff's First and Fourth Amendment rights pursuant to 42 U.S.C.A. section 1983 (2003), as well as conspiracy to interfere with civil rights, neglect to prevent a civil rights violation, and common-law false arrest. Plaintiff seeks the remedy of monetary damages. By the present motion, Defendants seek summary judgment as to all claims.

## I.  Summary Judgment Standard

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

4

party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II.     Scope of Analysis**

Plaintiff concedes that Defendants are entitled to summary judgment with respect to the City of Brentwood and the John Doe defendants. (*See* Docket Entry No. 54, at 7.) Knight and Maxwell are the only defendants remaining in the case (i*d.*), and they are being sued in their individual capacities. *Cf. Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Petty v. Cnty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007); *Arbuckle v. City of Chattanooga*, 696 F. Supp. 2d 907, 929 (E.D. Tenn. 2010).[2] Applying Plaintiff's concession to the amended complaint, the Court concludes that Plaintiff does not oppose summary judgment on Count IV (constitutional violation as custom or usage, citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)), Count V (deliberate indifference of municipality), Count VI (failure to train), and Count VII (neglect to prevent civil rights violation). With respect to Knight and Maxwell, Plaintiff does oppose summary judgment on Count I (First Amendment violation), Count II (Fourth Amendment violation), Count VII (conspiracy to interfere with civil rights), and Count XI (common-law false arrest).[3]

**III.    Qualified Immunity**

Defendants assert that the doctrine of qualified immunity shields Knight and Maxwell from suit on the federal constitutional claims. "The doctrine of qualified immunity protects

---

[2] As stated in the cited authorities, suing Knight and Maxwell in their official capacities would be equivalent to suing the city of Brentwood itself.

[3] The amended complaint does not include a Count III.

government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Pursuant to Supreme Court precedent, the qualified immunity inquiry is two-pronged. One prong is "whether, viewed in the light most favorable to [the] plaintiff, the facts show that the officer's conduct violated a constitutional right." *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The other prong is "whether the constitutional right was 'clearly established' at the time of the violation. If not, the officer would be entitled to qualified immunity." *Id.* In other words, "the court must examine 'whether the right is so "clearly established" that a reasonable official would understand that what he is doing violates that right.'" *Charvat v. E. Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 616 (6th Cir. 2001) (quoting *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1154 (6th Cir. 1996)).[4] "A third consideration occasionally examined by [the Sixth Circuit] to 'increase the clarity' of the analysis is 'whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005)). "Although the application of qualified immunity comprises a legal issue, summary judgment is inappropriate when conflicting evidence creates subordinate predicate factual questions which must be resolved by a fact finder at trial." *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999) (citing *Johnson v. Jones*, 515 U.S. 304, 313-15 (1995)); *Brooks v. Sevier Cnty.*, 279 F. Supp. 2d 954, 958 (E.D. Tenn. 2003).

A. **Fourth Amendment Violation**

---

[4] The Supreme Court's *Pearson* decision gives district courts the discretion to choose the order in which they analyze the two prongs of the qualified immunity analysis. 555 U.S. at 236.

6

Defendants contend that Knight and Maxwell are entitled to qualified immunity on Plaintiff's Fourth Amendment claim because probable cause existed for Plaintiff's arrest. Before reaching the facts of the arrest itself, Defendants point to the disposition of Plaintiff's case—*i.e.*, retirement of the charge subject to conditions—as an admission of probable cause. To support this proposition, Defendants cite two malicious prosecution cases in which the trial court entered summary judgment for the defendant. *See Mitchem v. City of Johnson City*, 2010 WL 4363399, at *6 (E.D. Tenn. Oct. 27, 2010); *Anderson v. Wal-Mart Stores, Inc.*, 2008 WL 1994822, at *7 (M.D. Tenn. May 2, 2008). The elements of a malicious prosecution claim are "(a) that a prior lawsuit or judicial proceeding was brought against the plaintiff without probable cause, (b) that the prior lawsuit or judicial proceeding was brought against the plaintiff with malice, and (c) that the prior lawsuit or judicial proceeding terminated in the plaintiff's favor." *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005). In both of the cited cases, the defendant prevailed on the third prong because, as a matter of law, the plaintiff could not show that the resolution of the criminal case amounted to a favorable termination of the prior proceeding. *See Mitchem*, 2010 WL 4363399 at *6 (dismissal of prosecution for payment of court costs); *Anderson*, 2008 WL 1994822, at *6 (charges retired for a year and then formally dismissed).

The Court acknowledges there is some overlap between the concept of a favorable termination and the determination of probable cause. *See Christian v. Lapidus*, 833 S.W.2d 71, 74 (Tenn. 1992) ("[t]he 'favorable' component is required because a judgment in favor of the original plaintiff is conclusive of probable cause[.]"). Nonetheless, the elements of a malicious prosecution claim distinguish the question of whether the prior proceeding was brought without probable cause (the first element) from whether the prior proceeding terminated in favor of the plaintiff bringing the malicious prosecution claim (the third element). Defendants have cited

7

cases that analyze the third element but are silent on the first element. After considering Defendants' authorities and finding them distinguishable, the Court concludes that the retirement of Plaintiff's disorderly conduct charge does not preclude Plaintiff from arguing that Defendants lacked probable cause to arrest him.

The Court now turns to whether the facts, viewed in the light most favorable to Plaintiff, show that Officers Knight and Maxwell violated Plaintiff's constitutional rights. A police officer has probable cause to arrest when there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Ross v. Duggan*, 402 F.3d 575, 585 n.6 (6th Cir. 2004). Focusing on the facts known to the officer at the time of arrest, "'[p]robable cause is assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 615 (6th Cir. 2007) (quoting *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)). The analysis to determine the presence or absence of probable cause begins with the language of the criminal statute at issue. *Cf. Leonard v. Robinson*, 477 F.3d 347, 354 (6th Cir. 2007); *Johnson v. Wolgemuth*, 257 F. Supp. 2d 1013, 1026 (S.D. Ohio 2003). Here, Plaintiff was charged with violating Tennessee's disorderly conduct statute, which reads as follows:

> (a) A person commits an offense who, in a public place and with intent to cause public annoyance or alarm:
> (1) Engages in fighting or in violent or threatening behavior;
> (2) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or
> (3) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.
> (b) A person also violates this section who makes unreasonable noise that prevents others from carrying on lawful activities.

8

(c) A violation of this section is a Class C misdemeanor.

Tenn. Code Ann. § 39-17-305 (2010). Subsection (a)(1) is the provision at issue here.

The circumstances of Plaintiff's arrest involve a combination of disputed and undisputed facts. The parties disagree over what Plaintiff told Officer Maxwell when Plaintiff turned off of Franklin Road into the Kroger parking lot. According to Officer Maxwell's sworn affidavit of complaint, Plaintiff said that "You scared me; I'm getting my gun." Plaintiff maintains that he never used the word "gun" and instead said, "Someone is liable to get shot or run over standing in the middle of the road." The parties agree that an officer told Plaintiff to "move on" and that Plaintiff drove back later along the same section of Franklin Road. When Plaintiff came back through, he was holding a shiny silver object, which turned out to be a camera that he was using to record video of the traffic stop.

If the jury believes the officers' version of events, then Knight and Maxwell will be entitled to qualified immunity on the Fourth Amendment claim because they had probable cause to arrest Plaintiff for disorderly conduct. The jury may reach a different conclusion, however, if it believes Plaintiff's version of events. Specifically, the Court rejects Defendants' contention that, as compared to Plaintiff's threat to get his gun, "[t]elling a police officer that, 'someone is going (or liable to) to get shot,' [sic] is equally threatening for purposes of the commission of the offense of disorderly conduct." (*See* Docket Entry No. 49, at 20 n.5.) To the contrary, the Court concludes that a genuine issue of material fact remains as to whether this statement, combined with Plaintiff's driving back through the area recording video of the traffic stop after an officer had directed him to "move on," constituted "violent or threatening behavior" performed "with intent to cause public annoyance or alarm." A reasonable jury may conclude that, based on Plaintiff's conduct, Knight and Maxwell did not have probable cause to later arrest Plaintiff for

9

disorderly conduct. *Cf.* Tenn. Code Ann. § 39-17-305(a)(1). Where "the legal question of immunity is completely dependent upon which view of the facts is accepted," the jury "becomes the final arbiter" of the qualified immunity issue. *Brandenberg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989); *accord Painter*, 185 F.3d at 567; *Brooks*, 279 F. Supp. 2d at 958.

In their reply brief (Docket Entry No. 62, at 6), Defendants argue for the first time that no constitutional violation took place because Officers Knight and Maxwell had probable cause to arrest Plaintiff for another offense. *See Howard v. Smith County*, 2011 WL 4361486, at *7 (M.D. Tenn. Sept. 19, 2011) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004)) ("[I]f an officer has probable cause to arrest a suspect for *any* crime, there is no Fourth Amendment violation, even where the police officer lacked probable cause to arrest for the actual offense charged."). Defendants' procedure is improper, since the Sixth Circuit considers raising an issue for the first time in a reply brief to be insufficient for preserving the argument on appeal. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 331-32 (6th Cir. 2008); *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001). In any event, the argument fails on its merits. Defendants claim that they also had probable cause to arrest Plaintiff for violation of Tennessee Code Annotated section 55-8-104 (2008), which makes it a class C misdemeanor to "willfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control or regulate traffic." Viewing the facts in the light most favorable to Plaintiff, there was no probable cause to arrest Plaintiff for this offense either, as Plaintiff complied with the officers' instruction to "move on" by proceeding into the lot and parking his vehicle to shop for groceries inside the Kroger. Plaintiff drove back along the same section of Franklin Road later that day to return to his home, but did not re-enter the Kroger parking lot.

10

The Court now turns to the other prong of the qualified immunity inquiry: whether Plaintiff's right was clearly established at the time of the alleged violation. For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011). Without requiring that "the very action in question has previously been held unlawful," the "clearly established" concept means that "in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 641; *Bass v. Robinson*, 167 F.3d 1041, 1051 (6th Cir. 1999). "'A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point.'" *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) (quoting *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002)). "An action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (citing *Hope v. Pelzer*, 536 U.S. 730, 740-41 (2002)). The federal right to be free from arrest without probable cause is clearly established. *Everson v. Leis*, 556 F.3d 484, 500 (6th Cir. 2009).

"Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *DeFillippo*, 443 U.S. at 36; *Leonard*, 477 F.3d at 354. Accordingly, to determine the extent to which the right is clearly established, courts will consider cases decided prior to the arrest that interpret the state law at issue. *See, e.g.*, *Kennedy v. City of Villa Hills*, 635 F.3d 210, 216 (6th Cir. 2011); *Leonard*, 477 F.3d at 358. A survey of representative case law interpreting section 39-17-305(a) reveals that "violent or threatening behavior" involves conduct more severe than Plaintiff's actions here, viewing the facts of the arrest in the light most

11

favorable to Plaintiff. In *State v. Roberts*, the Court of Criminal Appeals affirmed an adjudication of delinquency for a juvenile convicted of disorderly conduct. 106 S.W.3d 658, 660-61 (Tenn. Crim. App. 2002). After a tense meeting with the supervisor of his alternative school, the defendant said, "I'll take care of you," and, when asked what he meant, replied, "You can interpret it anyway you want to take it." *Id.* at 661. As the defendant left the building, he told the supervisor to "come on outside" and made physical gestures from outside the building. *Id.* In *State v. Creasy*, the same court held the evidence was sufficient to uphold the defendant's conviction for disorderly conduct in an incident arising from the citation of a vehicle improperly parked in a Wal-Mart parking lot. 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). The testimony at trial showed that, as the officer wrote the citation, the defendant approached the officer, positioned himself between the officer and the vehicle being cited, clenched his fist on one hand, pointed a finger on his other hand at the officer, and used numerous profanities. *Id.*

Applying the law to this case, the Court concludes that the trier of fact may find that a reasonable officer would understand that arresting Plaintiff was a violation of Plaintiff's clearly established constitutional rights. In other words, Plaintiff has submitted sufficient evidence that Officers Knight and Maxwell were objectively unreasonable to arrest Plaintiff without probable cause to believe that Plaintiff had violated Tennessee law. Officers Knight and Maxwell are not entitled to qualified immunity as a matter of law on Plaintiff's Fourth Amendment claim.

### B. First Amendment Violation

Plaintiff alleges that he was arrested in retaliation for attempting to exercise his First Amendment right to file a police complaint. A retaliation claim consists of three elements:

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that

12

activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998); *accord Leonard*, 477 F.3d at 355. As before, the Court begins the qualified immunity analysis by determining whether the facts, viewed in the light most favorable to Plaintiff, show the officers' violation of Plaintiff's constitutional rights.

Based on case law involving analogous conduct, the Court finds that Plaintiff engaged in a constitutionally protected activity by appearing at the police station and stating his intent to file a complaint. *See, e.g.*, *McCurdy v. Montgomery Cnty.*, 240 F.3d 512, 520 (6th Cir. 2001) ("[F]reedom to express disagreement with state action . . . is unequivocally among the protections provided by the First Amendment."); *Bloch*, 156 F.3d at 678 (criticizing sheriff and his department in newspaper interview); *Hansen v. Williamson*, 440 F. Supp. 2d 663, 677 (E.D. Mich. 2006) ("[A] citizen has a First Amendment right to verbally challenge or criticize a government official's authority."); *McCormick v. City of Lawrence*, 253 F. Supp. 2d 1172, 1193-96 (D. Kan. 2003) (protesting police traffic stops).[5] Under the next element of the retaliation claim, Plaintiff must show the Defendants' actions were "*capable of* deterring a person of ordinary firmness from exercising his or her [constitutional] right." *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (emphasis added). The Court finds that Plaintiff's arrest meets this standard because the Sixth Circuit has held that even detention is likely to chill a person of ordinary firmness from exercising First Amendment rights. *See Ctr. for Bio-Ethical Reform, Inc.*

---

[5] Plaintiff's version of the facts defeats, at least at the summary judgment phase, Defendants' argument that Plaintiff engaged in "fighting words" not protected by the First Amendment. Plaintiff's statement that someone was liable to get shot or run over by standing in the road does not fall within that "small class of expressive conduct that is likely to provoke the average person to retaliate, and thereby cause a breach of the peace." *Knight Riders of Ku Klux Klan v. City of Cincinnati*, 72 F.3d 43, 46 (6th Cir. 1995). Indeed, because "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," *City of Houston v. Hill*, 482 U.S. 451, 461 (1987), the Sixth Circuit has held that even obscenity directed at a police officer does not fall within the "fighting words" exception. *Greene v. Barber*, 310 F.3d 889, 896 (6th Cir. 2002).

13

*v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007).  Finally, Knight and Maxwell's failure to apprehend Plaintiff prior to his appearance at the police station to file a complaint creates an inference that Plaintiff's arrested was motivated by his exercise of First Amendment rights.  A genuine question of material fact remains as to Knight's and Maxwell's motivations for arresting Plaintiff.  *Cf. Kennedy*, 635 F.3d at 219; *Barrett v. Harrington*, 130 F.3d 246, 263 (6th Cir. 1997).  Accordingly, the trier of fact could conclude that Knight and Maxwell violated Plaintiff's constitutional rights.

As to the second prong, the Sixth Circuit has repeatedly held that the right to be free from retaliatory arrest after criticizing a police officer is clearly established.  *See Kennedy*, 635 F.3d at 219; *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002); *Barrett*, 130 F.3d at 264.  This line of precedent defeats Knight and Maxwell's claim for qualified immunity because it would be objectively unreasonable to arrest Plaintiff for seeking to file a police complaint.

With reference to both prongs of the qualified immunity inquiry, Defendants raise the issue of the existence of probable cause.  In *Hartman v. Moore*, the Supreme Court held that the absence of probable cause must be pled and proven as part of a section 1983 claim for retaliatory prosecution.  547 U.S. 250, 265-66 (2006).  Defendants argue that the holding of *Hartman* should extend to claims for retaliatory arrest, although Defendants concede the Sixth Circuit has not authoritatively decided the issue. *Compare Barnes v. Wright*, 449 F.3d 709, 719-20 (6th Cir. 2006) (requiring absence of probable cause where arresting officers also initiated grand jury proceedings against the plaintiff and commenced the arrest following the grand jury indictment), *with Kennedy*, 635 F.3d at 217 n.4 (declining to resolve the issue in cases that follow the "commonplace pattern" of arrest prior to prosecution), and *Leonard*, 477 F.3d at 355 (similar).  Defendants also argue that, even if the absence of probable cause has not become an element of

14

the claim for retaliatory arrest, the lack of clarity in the law at the time of Plaintiff's arrest precludes the right from being "clearly established" and entitles Knight and Maxwell to qualified immunity.

The Court declines to adopt Defendants' arguments and instead follows the approach taken by the Sixth Circuit in *Kennedy* and *Leonard*. In both cases, the Sixth Circuit denied qualified immunity to the arresting officers because the facts, viewed in the light most favorable to the plaintiffs, showed an absence of probable cause for the arrest. *Kennedy*, 635 F.3d at 217 n.4; *Leonard*, 477 F.3d at 355. Similarly, for reasons discussed *supra*, the Court finds that the question of probable cause for Plaintiff's arrest depends on the resolution of genuine issues of material fact. Accordingly, this Court need not decide whether probable cause is an element of the retaliatory arrest claim in order to allow Plaintiff's claim to go forward.

In summary, the Court denies qualified immunity to Knight and Maxwell on both the Fourth Amendment claim for arrest without probable cause and the First Amendment claim for retaliatory arrest.[6]

## IV. Conspiracy Claim

Knight and Maxwell are entitled to summary judgment on Plaintiff's claim for conspiracy to interfere with civil rights pursuant to 42 U.S.C.A. section 1985 (2003). While Plaintiff has not specified which provision of section 1985 is implicated here, the Court assumes that subpart (3) (depriving persons of rights or privileges) is at issue. The Supreme Court has interpreted this

---

[6] Defendants briefed the issue of qualified immunity separately from the issue of whether they are entitled to summary judgment on the merits. This parsing of the analysis made sense at the time because Plaintiff had not yet conceded summary judgment as to the City of Brentwood and John Doe defendants. For purposes of this Memorandum, however, the Court need not include separate analysis on the merits of Plaintiff's claims. That analysis would simply repeat the Court's findings under the first prong of the qualified immunity inquiry: viewing the facts in the light most favorable to Plaintiff, a reasonable trier of fact could conclude that Knight and Maxwell violated Plaintiff's constitutional rights under the First and Fourth Amendments.

15

provision to "mean[] that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Dunn v. Tennessee*, 697 F.2d 121, 124 (6th Cir. 1982). The failure to demonstrate the invidiously discriminatory animus motivating the conspiracy is grounds to enter summary judgment against the plaintiff. *See Radvansky*, 395 F.3d at 314; *Bass*, 167 F.3d at 1050. In this case, because Plaintiff has pointed to no evidence of discriminatory animus behind the alleged conspiracy to interfere with Plaintiff's civil rights, summary judgment for Defendants is appropriate.

## V. False Arrest

"The elements of the tort of false imprisonment[7] are (1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint." *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990) (footnote added). Defendants' sole argument for summary judgment for Knight and Maxwell on the false arrest claim is that they had probable cause to arrest Plaintiff. (Docket Entry No. 49, at 23-24.) For reasons discussed *supra*, the Court finds that the question of probable cause depends on the resolution of genuine issues of material fact. Therefore, summary judgment on Plaintiff's false arrest claim is inappropriate.

## VI. Evidentiary Issues

Defendants have moved to strike certain of Plaintiff's responses to Defendants' Statement of Undisputed Material Facts. (Docket Entry No. 63.) With respect to the objections to statements of fact relevant to the pending motion for summary judgment, the Court has been able to find support for those statements elsewhere in the record. Plaintiff's own Additional Statement of Material Facts (Docket Entry No. 73-1 ¶ 11) confirms the gravamen of Defendants'

---

[7] In Tennessee, the tort of false arrest is actually known as false imprisonment. *Bettis v. Pearson*, 2007 WL 2426404, at *11 (E.D. Tenn. Aug. 21, 2007).

16

undisputed material fact number 42: an officer instructed Plaintiff to "move on" after Plaintiff had pulled off of Franklin Road into the Kroger parking lot. As for the conditional retirement of Plaintiff's disorderly conduct charge set forth in Defendants' undisputed material fact number 59, the Court has elided Plaintiff's hearsay objection by citing the court document itself. (*See* Docket Entry No. 48-6.) The remaining objections at issue pertain to statements of fact on which the Court has not relied in adjudicating the pending summary judgment motion. Therefore, the Defendants' entire motion to strike is denied as moot.

In their memorandum in response to Defendants' motion, Plaintiff requests the exclusion of a portion of Maxwell's affidavit for failure to comply with Federal Rule of Civil Procedure 37. (*See* Docket Entry No. 54, at 5 n.44.) The Court did not rely on that portion of the affidavit in adjudicating the pending summary judgment motion. The objection is overruled as moot.

## CONCLUSION

For all of the reasons stated, Defendants' Motion for Summary Judgment (Docket Entry No. 46) will be granted in part and denied in part. The motion will be granted as to Counts IV, V, VI, VII, and VIII. With respect to the remaining counts, the motion will be denied as to Lieutenant Knight and Officer Maxwell in their individual capacities, and will be granted as to all other defendants. Also, Defendants' Motion to Strike (Docket Entry No. 63) will be denied as moot.

An appropriate Order shall be entered.

*[signature: Kevin H. Sharp]*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE